**STATE of Minnesota, Respondent,**

v.

**Terry Burnie WILKENS, Appellant.**

**No. CX–02–2136.**

Court of Appeals of Minnesota.

Dec. 2, 2003.

Douglas G. Sauter, William D. Siegel, Barna, Guzy & Steffen, Ltd., Minneapolis, for appellant.

Mike Hatch, Attorney General, Steven H. Alpert, Assistant Attorney General, St. Paul, and Jeffrey Edblad, Isanti County Attorney, Cambridge, for respondent.

Considered and decided by STONEBURNER, Judge, WILLIS, Judge, and SHUMAKER, Judge.

## OPINION

STONEBURNER, Judge.

Appellant Terry Burnie Wilkens challenges his conviction of criminal sexual conduct in the fourth degree for engaging in sexual contact with his minor daughter, arguing that the district court erred by failing to suppress statements he made in a non-custodial interrogation and evidence obtained pursuant to a search warrant that was based on those statements. He also argues that the district court erred in awarding restitution to Isanti County for the cost of his daughter's foster care and awarding restitution for the cost of personal property allegedly disposed of by respondent, unrelated to the sexual offense. We affirm the district court's denial of appellant's motion to suppress, reverse the restitution award for property allegedly destroyed in an act not related to the crime of which appellant was convicted, and remand for a recalculation of the restitution award to Isanti County.

## FACTS

Appellant's 16–year–old daughter, TW, ran away from home. The next day she was found and was interviewed by a child protection investigator (Zierden) and an investigator from the Isanti County Sheriff's Department (Akers). TW claimed that she ran away because of three incidents of sexual abuse by her father. TW

was initially placed on a 72–hour child-protection hold and was later placed in foster care.

Akers and Zierden asked appellant to come to an interview to discuss his daughter's circumstances. Appellant claims he was not informed of the allegations of sexual abuse. Akers claims he was so informed. Appellant voluntarily appeared for an interview by Akers and Zierden. Appellant has stipulated that this was a non-custodial interview, and therefore not subject to the requirements of *Scales* or *Miranda.*

The beginning of the interview was not recorded. Appellant was provided with a "Tennessen Warning Statement," [1] which he read and signed. The warning informed appellant that he did not have to answer any questions and that any information given could be used for investigations by other agencies, including local and state law enforcement. Appellant claims that he only signed the warning because Akers told him that any statements he made were confidential. Akers testified that he would not have made such a statement in the circumstances of this case.[2]

The remainder of the interview was recorded and appellant admitted that he engaged in the sexual conduct alleged by his daughter. Appellant told Akers and Zierden that he kept a journal to help him deal with his wife's death. After the interview was over, appellant called Zierden and told her that he had written a letter that explained what had happened. Based on appellant's statements, the police obtained a search warrant for appellant's home and seized the journal and the letter, which were used as evidence in his trial.

On two occasions, the district court denied appellant's motions to suppress his statements and the evidence seized under the warrant. Appellant was convicted after a bench trial and was sentenced to prison for a year and a day, with all but 120 days stayed, and probation for five years. The district court also ordered appellant to pay restitution in the amount of $12,926.99 to reimburse the county for the cost of his daughter's foster care and to reimburse his daughter for personal property that appellant allegedly destroyed in an act unrelated to this crime. This appeal followed.

## ISSUES

1. Did the district court err in determining that appellant's statements were voluntary?

2. Did the district court abuse its discretion by awarding restitution to Isanti County for the full cost of appellant's daughter's foster care and by awarding restitution to appellant's daughter for destruction of property that was not related to the crime of which appellant was convicted?

## ANALYSIS

**1. Motion to suppress**

 When a defendant seeks to suppress a confession on the ground that it

---

1. The Minnesota Government Data Practice Act provides: "An individual asked to supply private or confidential data concerning the individual shall be informed of: (a) the purpose and intended us of the requested data ...; (b) whether the individual may refuse or is legally required to supply the requested data; (c) any known consequences arising from supplying or refusing to supply private or confidential data; and (d) the identity of other persons or entities authorized to receive the data". Minn.Stat. § 13.04, subd. 2 (2002). This warning is known as a Tennessen warning.

2. The district court did not make a credibility determination on this issue, concluding that whether appellant was promised confidentiality was moot in light of the Tennessen warning to the contrary.

was involuntary, the state has the burden to prove voluntariness by a fair preponderance of the evidence. *State v. Thaggard,* 527 N.W.2d 804, 807 (Minn.1995). The district court's role, in such a case, is to resolve evidentiary factual disputes. *Id.* This court is not bound by the district court's determination; we review to independently determine, based on factual findings that are not clearly erroneous, whether or not the confession was voluntary. *Id.* We look to all of the relevant factors to determine whether a confession was voluntary, including the defendant's age, maturity, intelligence, education, experience, and ability to comprehend; the lack of or adequacy of a warning; the nature of the interrogation; and whether the defendant was deprived of physical needs or denied access to friends. *Id.* at 808.

■ The record supports the district court's findings that appellant was "alert, responsive, did not object to the questioning, nor did he decline to answer any question or ask to suspend the interview at any time." The district court's findings that appellant was not deprived of any physical needs or forced to endure a lengthy or threatening interview are also supported by the record. The district court correctly noted that the relevant factors in this case include the fact that appellant read and signed the Tennessen warning that was labeled in bold at the front and center top of the first page "Your Privacy Rights—Child Protective Services," and informed appellant that he need not answer and that information he provided was not confidential. Local and state law enforcement were among the 12 agencies specifically listed in the Tennes-

sen warning as agencies that may receive the information. The district court did not err in concluding that appellant's statements and confession were voluntary.

## 2. Restitution

Appellant also challenges the restitution award to Isanti County for the cost of his daughter's foster care and the award of $633 to his daughter for personal property appellant allegedly destroyed in an act unrelated to his conviction.

■ A district court has broad discretion in ordering reasonable restitution. *State v. Tenerelli,* 598 N.W.2d 668, 671 (Minn.1999), *cert. denied,* 528 U.S. 1165, 120 S.Ct. 1183, 145 L.Ed.2d 1089 (2000). Restitution includes payment of compensation to a government entity that incurs a loss as a direct result of a crime. Minn. Stat. § 609.10, subd. 2(a)(2) (2002); *see* Minn.Stat. § 611A.01 (b) (2002) (defining "victim" to include a government entity that incurs loss or harm as a result of a crime). A request for restitution may include, but is not limited to, any out-of-pocket losses resulting from the crime, including replacement of services. Minn. Stat. § 611A.04, subd. 1(a) (2002).

■ Appellant asserted for the first time on appeal the proposition that Isanti County is not a victim of appellant's crime and is not entitled to claim restitution, arguing that the costs of foster care were not a direct consequence of appellant's crime. Because this argument was not raised in the district court, we consider it waived.[3] *See Roby v. State,* 547 N.W.2d 354, 357. (Minn.1996). But appellant argued to the district court that in determining whether to award restitution and the

---

**3.** We note, however, that the cases relied on by appellant to assert that the county is not a victim predate the 1997 amendment to Minn. Stat. § 609.10, subd. 2(2) that defines restitu-

tion to include payment of compensation to a government entity that incurs loss as a direct result of a crime.

amount of restitution, the district court is required to consider the income, resources and obligations of the defendant, pursuant to Minn.Stat. § 611A.045 subd. 1(a)(2).

■ Appellant asserts that he does not have the ability to pay the amount of restitution claimed by Isanti County. The district court did not consider appellant's income or obligations, other than to note that appellant has $100,000 net equity in his homestead "which can be accessed to pay it."

■ Furthermore, Minn.Stat. § 260C.331 subd. 1(a)(1), (c) provides that

(a) Except where parental rights are terminated,

(1) whenever legal custody of a child is transferred by the court to a responsible social services agency,

. . . .

(c) If the income and resources attributable to the child are not enough to reimburse the county for the full cost of the care, ... the court shall inquire into the ability of the parents to support the child and, after giving the parents a reasonable opportunity to be heard, the court shall order, and the responsible social services agency shall require, the parents to contribute to the cost of care, ... When determining the amount to be contributed by the parents, the court shall use a fee schedule based upon ability to pay that is established by the responsible social services agency and approved by the commissioner of human services.

Minn.Stat. § 260C.331 subd. 1(a)(1), (c) (2002). Because this statute applies to all non-termination-of-parental-rights transfers of custody to a social service agency, and requires the use of an established fee schedule, we conclude that when the district court orders a parent to pay restitution for foster care, it should apply the provisions of Minn.Stat. § 260C.331, subd. 1(1)(c), to determine the amount. We therefore remand to the district court for a recalculation of appellant's restitution obligation to Isanti County.

■ There is nothing in the record to support the award of $633 to appellant's daughter for destruction of personal property. No evidence was presented that any personal property was destroyed as a result of appellant's crime. The district court abused its discretion by awarding $633 for undocumented damages unrelated to appellant's crime.

### DECISION

Appellant's non-custodial statement was voluntarily given. The district court did not err in denying appellant's motions to suppress his statement and the evidence seized under a search warrant that was issued based on his statements. The restitution award to Isanti County for the cost of foster care that was required for appellant's daughter as a result of his criminal sexual conduct against her is affirmed but remanded for a redetermination of the amount under Minn.Stat. §§ 611A.045, subd. 1 and 260C.331, subd. 1. The restitution award for destruction of personal property is reversed.

**Affirmed in part, reversed in part, and remanded.**